# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONNA RANKIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-10-260-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Donna Rankin requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do his previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born April 15, 1957, and was fifty-two years old at the time of the administrative hearing (Tr. 122). She completed her GED (Tr. 136), and has worked as clerical/receptionist, delivery driver, and data entry (Tr. 17, 37). The claimant alleged that she has been unable to work since July 1, 2005, due to congestive heart failure, arthritis, carpal tunnel, depression, anxiety, high blood pressure, and a knee injury. (Tr. 24, 123, 131).

## Procedural History

On December 21, 2006, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 106-110).[2] Her application was denied. ALJ Deborah L. Rose conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 8, 2009. (Tr. 9-18). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that, through the claimant's date last insured, she had the residual functional capacity (RFC) to perform a full range of sedentary work, *i. e.*, she could lift no more than 10

---

[2] The claimant also applied for, and was awarded, supplemental security income benefits as of December 21, 2006. (Tr. 21).

pounds at a time, and occasionally lift/carry docket files, ledgers, and small tools. The ALJ imposed the additional limitations of only occasionally crawling, kneeling, crouching, climbing, or handling. (Tr. 13). The ALJ concluded that, although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, information clerk, telephone soliciting, and semi-conductor loader. (Tr. 17-18).

## Review

The claimant contends that the ALJ erred (i) by failing to properly determine her RFC, because the ALJ included no limitation on the her fingering capacity; (ii) by failing to perform a proper credibility analysis; and (iii) by finding at step five that she could do the job of information clerk, which requires no fingering, because the job does not exist in sufficient numbers. The Court finds the claimant's second contention persuasive, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant had the severe impairments of congestive heart failure, degenerative joint disease in the right knee and right radio-carpal joint, and that she had nonsevere depression. (Tr. 11). The claimant had complaints of right knee pain as early as November 2002, and a November 2004 MRI revealed substantial non-surgical damage. (Tr. 170, 176). The same November 2004 exam as discussed above revealed that the claimant had "marked tenderness over the dorsum of the hand with substantial reduction in the mobility at the wrist and each finger." (Tr. 177). In October 2006, the claimant had x-rays of her right wrist, which indicated generalized osteopenia, deformity of the distal radius suggesting a healed fracture, and a chronic ulnar styloid fracture, as

well as degenerative change of the radiocarpal joint with joint space narrowing.  (Tr. 230).  A February 2007 screening of the claimant's right wrist revealed severe joint space narrowing identified at the radiocarpal joint, with subarticular sclerosis and submarginal osteophyte formation.  The impression was that the claimant had osteopenia, osteoarthritis, and old healed trauma in her right wrist.  (Tr. 218).

The claimant was also assessed on January 23, 2007 at CREOKS Mental Health Services.  She was assigned a Global Assessment of Functioning ("GAF") score of 48, and assessed as having a depressive disorder not elsewhere classified, as well as generalized anxiety disorder.  (Tr. 243).  A state consultative examiner performed a mental status exam on May 15, 2007, assigned the claimant a GAF of 55, and concluded that "[f]rom a psychological standpoint, based on her reported symptoms, history, and performance on this exam, her ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers is estimated to be low average.  The examiner did not expect the claimant's condition to improve significantly in the next year.  (Tr. 285).

At the administrative hearing, the claimant testified that she had broken her hand in the fifth grade and again in 1982, that she struggles with numbness in her hands and fingertips, that her right hand struggles with buttons and zippers, that she uses an aid to remove lids from jars, and that she can only type for five to ten minutes.  (Tr. 30-32).  As to her knee, she stated that she injured it in 2002, and there is no cartilage under the kneecap; and that it hurts to walk on her knee, because it grinds.  (Tr. 32-33).

Additionally, she testified that she struggles with shortness of breath, and struggles with memory and concentration. (Tr. 34-35).

The claimant contends, *inter alia*, that the ALJ failed to properly analyze her credibility with regard to the limiting nature of her condition. A credibility determination is entitled to deference unless there is an indication the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). Further, an ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ's credibility analysis here was the following: "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 16). The problem with this analysis (apart from vagueness) is that the ALJ should have first evaluated the claimant's testimony (along with all the other evidence) according to the above guidelines and then formulated an appropriate RFC, not

the other way around, *i. e.,* the ALJ apparently judged the credibility of the claimant's testimony by comparing it to a pre-determined RFC.  The ALJ compounded this error by failing to specify evidence that caused her to disbelieve the claimant, despite a lengthy recitation of the evidence (including the testimony of the claimant).  *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at * 2 (August 9, 2006) ("In addition to evidence from 'acceptable medical sources,' we may use evidence from 'other sources,' as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to:  Medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, licensed clinical workers, naturopaths, chiropractors, audiologists, and therapists[.]").

Because the ALJ failed to properly analyze the claimant's credibility, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.  If such analysis results in any adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.  The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 20th day of September, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma